RAYMOND R. ESCHER, Plaintiff-Appellee, *v.* NORFOLK AND WESTERN RAILWAY COMPANY, Defendant-Appellant.

Fifth District   No. 79-18

Opinion filed September 28, 1979.—Rehearing denied November 29, 1979.

Karl D. Dexheimer, of Pope and Driemeyer, of Belleville, for appellant.

Morris B. Chapman and Paul H. Lauber, of Granite City, for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Norfolk and Western Railway Company, appeals from the judgment of the Circuit Court of Madison County entered upon a jury verdict in favor of plaintiff Raymond R. Escher in an action to recover damages for personal injury under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (1976)).

The incident out of which this action arose occurred on defendant's property at its Luther yard in St. Louis, Missouri. Plaintiff, a carman for defendant, was transferred to the Luther yard in January of 1974. At approximately 3 p.m. on March 26, 1974, plaintiff was standing in the company's locker room located in the roundhouse waiting for a buzzer to signal the end of his day at work. As soon as the buzzer sounded, plaintiff followed a fellow employee, Stanley Schneider, to the exterior door of the building. Plaintiff testified that he was following Schneider by approximately 2½ feet and was looking straight into his back as they approached the door. He further testified that Schneider opened the door but that it did not open "like it normally should have." Plaintiff then bumped into Schneider and stepped on the back of his heel. Neither man fell and both continued through the door and out to the parking lot.

Plaintiff noticed some swelling around his left ankle when he got home and believed he had sprained it. Four months after the accident, he went to see the company doctor who took X rays and administered heat treatments. Thereafter, at the request of his attorney, plaintiff went to see a Dr. Heidke, a chiropractor, in January of 1976 who referred him to a Dr. Koenig. Koenig examined plaintiff in February of 1977 and testified at trial that plaintiff had broken three or four bone segments in his left ankle.

Stanley Schneider, the co-worker of plaintiff, testified on behalf of defendant. On direct examination, he testified that he did not have difficulty with the door on March 26, 1974, and added that he merely stopped to open it. He believed the door was operating "okay" from January of 1974 up to the time of the accident. On cross-examination, however, Schneider admitted that he did not remember exactly what happened and added that the door might or might not have been defective in the way it opened. On redirect examination, he attempted to clarify his testimony on cross-examination by stating that he had no trouble opening the door although there may have been a defective part. He concluded on re-cross-examination and on redirect that he did not know whether the door handle was working properly but he could not recall having any difficulty with it.

Joseph Whitley, plaintiff's supervisor, testified that he prepared a company report after plaintiff told him on March 27, 1974, about the

incident the previous afternoon. Whitley stated that he tried the door to see if it would function properly and found that it opened without any problem.

Richard Bain, a general contractor, testified as an expert witness for plaintiff. He stated that he examined the door in question in December of 1977. He found the door to be of a light commercial variety which should be used only in warehouses where there is light traffic. He further discovered that a brass screw, which served to hold the door knob and latch in place, was worn out by rubbing against a steel rod, apparently causing the latch to slip. Lastly, he found that the top strip of the door, which was not welded down, was "pried up and strung loose" and could therefore cause the door to jam. On cross-examination, he admitted that he had no idea what the condition of the door was in 1974. During the course of Mr. Bain's testimony, defendant's counsel objected on numerous occasions because there was no evidence that the expert was familiar with the door at the time of the accident.

The jury returned a verdict of $30,000 in favor of plaintiff upon which judgment was entered.

■■ ■ On appeal, defendant contends that the trial court erred in not directing a verdict in its favor because there was no evidence that it was negligent. Generally, under the Federal Employers' Liability Act a common carrier by railroad is liable in damages for injury to its employees resulting in whole or in part from the negligence of that carrier. As Congress intended the Act to be remedial legislation (*Urie v. Thompson* (1949), 337 U.S. 163, 93 L. Ed. 1282, 69 S. Ct. 1018), its provisions have been interpreted as imposing a greater duty on the carrier for paying damages for injury than under the common law. (*Rogers v. Missouri Pacific R.R. Co.* (1957), 352 U.S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443.) The critical feature of this legislation is that the jury has been afforded greater leeway in determining whether liability exists. *Eggert v. Norfolk & Western Ry. Co.* (2d Cir. 1976), 538 F.2d 509.

■■ As stated in the landmark case of *Rogers v. Missouri Pacific R.R. Co.*:

> "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the

injury or death." (352 U.S. 500, 506-07, 1 L. Ed. 2d 493, 499, 77 S. Ct. 443, 448-49.)

(See also *Gallick v. Baltimore & Ohio R.R. Co.* (1963), 372 U.S. 108, 9 L. Ed. 2d 618, 83 S. Ct. 659.) We note, however, that this legislation is not a workmen's compensation or insurance act (*Barrett v. Toledo, Peoria & Western R.R. Co.* (7th Cir. 1964), 334 F.2d 803); nor does it impose absolute liability. (*Foote v. Erie Lackawana Ry. Co.* (1976), 142 N.J. Super. 195, 361 A.2d 62.) As indicated by our supreme court in *Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 167 N.E.2d 212:

> "While it is the jury's function to decide the factual questions whether the defendant was negligent and whether such negligence was a proximate cause of the injury, the decision must be supported by something more than mere speculation. [Citation.] Unless there is evidence from which the inference may reasonably be drawn that the injury was caused by some negligent act of the employer, the case must be withdrawn from the jury." (19 Ill. 2d 428, 434, 167 N.E.2d 212, 215.)

We believe that the competent evidence in the instant case presented no more than a mere speculation of defendant's negligence, and therefore we reverse the judgment of the trial court.

Our review of the record, viewed in the light most favorable to plaintiff, reveals that the only evidence supporting his position is his own statement that the door did not open as "it normally should have." Plaintiff, however, could not conceivably know this as he had no opportunity to witness its opening. The individual who opened the door was Schneider, not plaintiff. Furthermore, plaintiff admitted that as he approached the exit, he was merely looking into the back of his co-worker.

The testimony of Schneider though somewhat contradictory, cannot be interpreted as any evidence of defendant's negligence. In viewing this testimony most favorable to plaintiff, we construe Schneider's statement as merely indicating that he simply could not recall what had happened when he opened the door more than four years before. His testimony did not present any positive evidence that it was malfunctioning. On the contrary, it reasonably indicated that Schneider had no difficulty with the door at that time. This testimony was corroborated by Joseph Whitley, plaintiff's supervisor, who had the opportunity to test the door the day following the accident. Whitley unequivocally stated that it was functioning properly.

The only other evidence presented which has a bearing on the outcome of this case is the testimony of Richard Bain, the general contractor. Defendant argues that the entire testimony of the contractor

was inadmissible because there was no proper foundation laid that the condition of the door at the time of his inspection in December of 1977 was the same as the condition of the door in March 1974, the time of the incident. Plaintiff, however, contends that there was ample foundation evidence where plaintiff testified on redirect examination that the door opened improperly in the same way in March of 1974 as it did in the winter of 1977. Defendant counters that this testimony as to the condition of the door was inadmissible because it was clearly beyond the scope of the preceding cross-examination. (See *City of Chicago v. Brown* (1978), 61 Ill. App. 3d 266, 377 N.E.2d 1031.) Furthermore, defendant argues that even if the testimony were admissible it had no probative value of the door's relative condition in 1974 and 1977 as plaintiff did not inspect the alleged defective mechanisms upon which the expert based his opinions.

It is true that plaintiff's testimony exceeded the scope of the cross-examination; however, defendant's failure to make a proper objection to this examination has waived this issue for consideration. Nevertheless, we believe that most of Bain's testimony is inadmissible, notwithstanding plaintiff's alleged foundation evidence.

■■ The general rule is that testimony based on an inspection of a physical object, after an incident involving that object resulted in injury, is not competent unless evidence is also introduced showing that the conditions inspected had remained unchanged in the interim. (*Cheek v. Avco Lycoming Division* (1977), 56 Ill. App. 3d 217, 371 N.E.2d 994; *La Salle National Bank v. Feldman* (1966), 78 Ill. App. 2d 363, 223 N.E.2d 180.) "But where the nature of the defect and the surrounding circumstances are such as to allow a reasonable inference that the defect subsequently established existed at the time of the accident, such evidence is admissible." *Gass v. Carducci* (1962), 37 Ill. App. 2d 181, 190, 185 N.E.2d 285, 290; see also 2 Wigmore, Evidence §437 (3rd ed. 1940).

■■ In the present case, Bain's testimony indicated that he found three things wrong with the door in 1977. First, he discovered that the brass screw used to hold the door knob in place was worn out. Second, he found that the metal cap on top of the door was "pried up" thereby creating a possibility for the door to jam. Third, he testified that a light commercial door should be used only in warehouses where there is little traffic. Our review of the case law and the evidence reveals that the expert's first two observations were clearly inadmissible. Bain had no idea of the door's condition at the time of the accident, which occurred more than 3½ years prior to his inspection. During this 3½-year time interval, the door was used by more than 80 employees daily, indicating that it was subject to a substantial amount of wear and tear. Plaintiff's statement that the door's condition had not changed could not serve as foundation evidence for Bain's testimony, as there was no evidence that plaintiff had

examined any of the door's internal components. Plaintiff therefore did not know whether the brass screw was worn or the top piece "pried up" at the time of the incident in question. Moreover, neither he nor the expert could know if anyone had tampered with the door, repaired any of its parts or otherwise altered the internal mechanisms during the time period between the accident and the inspection. In fact, is is doubtful whether the expert should have been permitted to testify at all where his testimony was contrary to the testimony of Schneider and Whitley. See *Siltman v. Reeves* (1971), 131 Ill. App. 2d 960, 269 N.E.2d 728.

■■ Bain's third observation that a light commercial door was inappropriately used in an area of heavy traffic, even if admissible, did not tend to prove defendant's negligence and justify submitting the case to the jury. An observation that a certain type of door is inappropriate for a particular location has no bearing on whether that door was malfunctioning at a specific time period. The only conceivable inference of defendant's negligence under these circumstances would be that a light commercial door used in an area of heavy traffic would tend to wear out over a period of time because of excessive use. But as there was no testimony in this case when the door was hung initially nor how much use it could withstand, it was impossible to make any inference when it began, if at all, to wear out and operate improperly. In fact, from all indicators, the door was in proper working order in March of 1974.

■■ In conclusion, the evidence established that plaintiff accidentally stepped on the back of Schneider's heel as Schneider routinely stopped to open the door to leave the roundhouse. There being only mere speculation of defendant's negligence, the trial court erred in failing to remove the case from the jury's consideration. Accordingly, the judgment of the Circuit Court of Madison County is reversed.

Reversed.

KUNCE and KASSERMAN, JJ., concur.